UNITED STATES of America

v.

Mordechai KRASELNICK, et
al., Defendants.

Crim. No. 88-16 (SSB).

United States District Court,
D. New Jersey.

Dec. 1, 1988.

Office of the U.S. Atty. by Kevin McNulty, Asst. U.S. Atty., Newark, N.J., for U.S.

Fleming, Merrill, Roth & Russell by Cathy Fleming, Newark, N.J., for defendant Bart.

Frederick W. Klepp, Cherry Hill, N.J., for defendant Kraselnick.

## OPINION

BROTMAN, District Judge.

Presently before the court are the pretrial motions of defendants Mordechai Kraselnick and Allan M. Bart (1) for dismissal of the indictment on multiple grounds; (2) for disclosure of grand jury materials; and (3) for logs showing that the United States is in compliance with the Financial Right to Privacy Act. Oral argument was held on most of these motions on May 6, 1988, and the court reserved its decision.[1]

Since that time the Third Circuit has handed down its decision in *United States v. Mastronardo*, 849 F.2d 799 (3d Cir.1988), which addresses several of the issues relevant to the defendants' motion to dismiss the indictment. Therefore, the parties were summoned back to court on October 14, 1988, to address the applicability of the Third Circuit's decision to this case. In addition, the parties were asked to address the Government's most recent pretrial motions (a) for an order precluding defendants from introducing evidence that should have been produced pursuant to the reciprocal discovery obligations of Rule 16(b); (b) for an order precluding defendant Bart from seeking *Bruton* redaction of his codefendant's statements; and (c) for an order, pursuant to Rule 26.2, requiring that prior statements of defense witnesses be identified and marked by defense counsel for production at or before trial. For the reasons stated below, with the exception of defendants' motion for the production of logs regarding the Financial Right to Privacy Act, the motions of defendants and of the government are denied in their entirety.

## I. FACTS AND PROCEDURE

The facts surrounding this case, as gleaned from the indictment and the submissions of the parties, are as follows. On or about January 26, 1983, defendant Kraselnick, the Chairman of the Board of Village Bank ("the Bank"), "caused" a package containing $81,000 in United States currency to be delivered to the Village Bank in South Orange, New Jersey. No Currency Transaction Report ("CTR") was filed by the Bank concerning this delivery. At Kraselnick's direction, the $81,000 was divided into amounts of $9,000 and deposited into three separate accounts over a three-day period. Those individual accounts belonged to various persons or entities including Kraselnick, defendant Bart, and a corporation controlled by Kraselnick and a business associate. No single ac-

1. At oral argument on May 6, 1988, the court granted defendants' other motions (1) to redact all references in the indictment to "Columbian" persons and corporations; (2) to compel the government to produce Rule 16 and *Brady* material; and (3) to allow defendants to make further pretrial motions. An appropriate order will be entered.

count received more than $10,000 in a single day and, therefore, no CTR was filed for any of the deposits by defendants or by the Bank.

Two months later, on or about March 31, 1983, defendant Bart, the Vice–Chairman of the Village Bank, sent $63,000 in United States currency to the Bank, along with seven filled-out deposit slips for seven different accounts, each for an amount less than $10,000. No CTR was filed by any party with respect to these funds.

Thereafter, on April 4, 1983, Bart caused $49,100 in currency to be delivered to the Bank. Included with the cash were six completed deposit tickets, each for a different account and each for an amount less than $10,000. Once again, no CTR was filed.

Finally, on April 5, 1983, defendant Bart caused $35,000 in cash to be delivered to the Bank, along with four deposit tickets for different accounts, each filled out for an amount less than $10,000. No CTR was filed regarding this money either.

None of the cash involved in the above transactions belonged to either Kraselnick or Bart and was instead the property of a "Columbian Corporation." Furthermore, most, if not all, of the money deposited above was later internally transferred to the account of the Columbian Corporation, a procedure for which no CTR is required to be filed.

On January 22, 1988, a federal grand jury returned a five-count indictment against defendants Kraselnick and Bart as well as against the Bank and John Bjerke, Executive Vice President and Senior Loan Officer of the Bank. Count One charged defendants with conspiring to fail and causing the Bank to fail to file CTR's for cash transactions in excess of $10,000, in violation of 18 U.S.C. § 371.[2] Counts Two through Five, keyed to each of the transactions described above, charged defendants with concealing and causing to be concealed reportable transactions in cash from the Internal Revenue Service, in violation of 18 U.S.C. §§ 2 and 1001.[3] In addition, all of the Counts rely on the existence of a legal duty, under 31 U.S.C. § 5313 and 31 C.F.R. § 103.22(a), to file CTR's for cash transactions in excess of $10,000.

## II. DISCUSSION

### A. Defendants' Motion To Dismiss the Indictment

Defendants move to dismiss the instant indictment on the grounds that (1) the underlying statute and regulations are unconstitutionally vague; (2) each Count of the indictment fails to charge a criminal offense; (3) the government withheld substantial exculpatory evidence from the grand jury; and (4) the government's inordinate delay in bringing this prosecution has deprived defendants of their fifth amendment due process rights. This court will address each of defendants' arguments *seriatim*.

### 1. The Constitutionality of the Statute and Regulations

■ Defendants challenge the application of 31 U.S.C. §§ 5313 and 5322, and the

**2.** 18 U.S.C. § 371 provides:

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

**3.** 18 U.S.C. § 1001 provides:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

18 U.S.C. § 2 provides:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

regulations promulgated thereunder, 31 C.F.R. § 32, on the grounds that they are unconstitutionally vague and that they violate their due process rights under the fifth amendment by giving insufficient notice that the actions alleged in the indictment were proscribed. In support of their argument, defendants rely almost exclusively on the Third Circuit's decision in *United States v. Mastronardo*, 849 F.2d 799 (3d Cir.1988) and the First Circuit's ruling in *United States v. Anzalone*, 766 F.2d 676 (1st Cir.1985). Both courts held certain provisions of the Reporting Act—31 U.S.C. § 5311 *et seq.*—and its corresponding regulations to be constitutionally deficient because they violated the fair warning requirements of the fifth amendment's due process clause, and, thus, reversed the appellants' convictions and dismissed the relevant parts of the indictments. The essence of defendants' argument is that the statute and regulations do not give fair warning that anyone other than a bank can be held liable for failing to file CTR's and that the statute and regulations do not clearly outlaw the "structuring" of deposits to avoid the reporting requirement.

Both the *Mastronardo* and *Anzalone* decisions, as well as defendants' argument here, center around the following language in the Reporting Act:

(a) When a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency (or other monetary instruments the Secretary of the Treasury prescribes), in an amount, denomination, or amount and denomination, or under circumstances the Secretary prescribes by regulation, the institution *and any other participant in the transaction the Secretary may prescribe* shall file a report on the transaction at the time and in the way the Secretary prescribes.

31 U.S.C. § 5313 (emphasis added). Significantly, the corresponding regulations, as originally enacted, only required financial institutions and not "any other participant" to file what became known as a CTR concerning each transaction of currency of more than $10,000. The relevant section of the Code of Federal Regulations states:

[e]ach *financial institution* other than a casino shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution which involves a transaction in currency of more than $10,000.

31 C.F.R. § 103.22(a) (emphasis added).[4]

In *Mastronardo,* the defendants, who were bank customers,[5] were charged and convicted, *inter alia,* of structuring certain currency transactions in order to prevent their banks from filing CTR's, in violation of the same statutes at issue in the case at bar.[6] On appeal, the court of appeals examined 31 U.S.C. § 5313 and 31 C.F.R. § 103.22 and found that:

Although the statute authorizes the Secretary to draft regulations requiring 'participants' in transactions to file CTR's, the Secretary did not do so. Rather, the Secretary enacted regulations which, by their explicit language, place a duty to file CTR's only on financial institutions. The regulations do not even intimate that a bank customer might somehow be violating the law if he structures his transactions so as to avoid making a transaction in currency greater than $10,000.

*Mastronardo,* 849 F.2d at 804–05.[7] As a result, the court held that the statute and regulations did not give a reasonable bank customer fair notice that structuring was

---

**4.** The statutes and regulations cited herein are the versions in effect at the time of the violations alleged in the indictment. Since 1983, the statutes and regulations have been amended to specifically bring "structured" transactions such as those alleged in this case under the purview of the CTR reporting requirements. *See* 31 U.S.C. § 5324 and 31 C.F.R. § 103.22(a)(1) (1987).

**5.** A distinction which is critical to this court's decision.

**6.** 18 U.S.C. §§ 1001, 371 and 2(b).

**7.** *Mastronardo* was also decided under the pre-amendment versions of the statute and regulations, before "structured" transactions were expressly addressed.

criminal and reversed the relevant parts of the convictions. The *Mastronardo* decision brought the Third Circuit in line with several other circuits which have held essentially the same thing—that "structured" transactions were not proscribed by the statute or regulations. *See, e.g., United States v. Gimbel,* 830 F.2d 621 (7th Cir.1987); *United States v. Larson,* 796 F.2d 244 (8th Cir.1986); *United States v. Varbel,* 780 F.2d 758 (9th Cir.1986); *United States v. Denemark,* 779 F.2d 1559 (11th Cir.1986); *United States v. Anzalone,* 766 F.2d 676 (1st Cir.1985).[8]

While this court is bound by the decision in *Mastronardo,* that case is distinguishable, and the holding is not applicable to this case. Here, while both defendants may have been bank *customers,* they were also *directors* of the Bank (indeed, Kraselnick was Chairman of the Board and Bart was Vice Chairman) and, thus, they can be held liable under the statute and regulations insofar as they were acting in their capacities as agents of the Bank. Clearly, a "financial institution" can only act through its employees, so the Secretary of the Treasury, in enacting 31 C.F.R. 103.22, must have intended the regulation to apply to those employees of a bank acting within the scope of their employment. To hold otherwise would completely eviscerate the intent of the regulation and its governing statute. In addition, such a reading does not conflict with the fifth amendment's fair notice provision because employees of a bank—especially officers and directors—should be aware that laws requiring a bank to perform or refrain from performing certain acts apply to them in their official capacity as agents of the bank.

Several other courts, including ones which had previously held that the statute and regulations were void for vagueness as applied to bank customers, have adopted this distinction. In *United States v. Polychron,* 841 F.2d 833 (8th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 135, 102 L.Ed.2d 107 (1988), for example, the court distin-

guished its earlier decision in *United States v. Larson,* 796 F.2d 244 (8th Cir. 1986):

> Here, the defendant charged with violating the reporting laws is the president of the bank at which the currency transactions were made, in sharp contrast to a bank customer [as in *Larson*] acting without the bank's knowledge. It is axiomatic that in our case the bank was alleged to be aware of the statutory duty to report as well as the deliberate efforts to evade that duty.... Accordingly, we hold that the Reporting Act sufficiently apprised Polychron that when a financial institution or its officer or employee acting within the scope of his employment structures an otherwise reportable transaction into multiple transactions in a single day that do not individually exceed $10,000, the bank or its officer or employee may be held criminally responsible for failing to file, or causing the bank to fail to file, a CTR.

*Polychron,* 841 F.2d at 836–37; *see also United States v. Thompson,* 603 F.2d 1200 (5th Cir.1979); *United States v. Richter,* 610 F.Supp. 480, 489 n. 16 (N.D.Ill.1985), *aff'd mem. sub nom. United States v. Mangovski,* 785 F.2d 312 and *United States v. Konstantinov,* 793 F.2d 1296 (7th Cir.), *cert. denied,* 479 U.S. 855, 107 S.Ct. 191, 93 L.Ed.2d 124 (1986).

Assuming, arguendo, that the Reporting Act can constitutionally be applied only to the financial institution itself, such a finding would not affect this court's decision as the defendants were not indicted for violating the Reporting Act. Rather, defendants are charged with (1) conspiring with the Bank to commit an offense against the United States, in violation of 18 U.S.C. § 371; (2) knowingly and wilfully concealing a material fact regarding a matter within the jurisdiction of an agency of the United States, in violation of 18 U.S.C. § 1001; and (3) causing an offense to be committed against the United States by

---

8. *But see United States v. Richeson,* 825 F.2d 17 (4th Cir.1987); *United States v. Heyman,* 794 F.2d 788 (2d Cir.), *cert. denied,* 479 U.S. 989, 107 S.Ct. 585, 93 L.Ed.2d 587 (1986); *United States*

v. *Cook,* 745 F.2d 1311 (10th Cir.1984), *cert. denied,* 469 U.S. 1220, 105 S.Ct. 1205, 84 L.Ed.2d 347 (1985), where the courts have upheld convictions on basically the same facts.

another (the Bank), in violation of 18 U.S.C. § 2. It is clear that these statutes apply to defendants' actions in this case.

The defendants concede that 31 U.S.C. § 5313 and 31 C.F.R. § 103.22 impose an affirmative duty on the Bank to file CTR's. In addition, it is axiomatic that, as directors of the Bank, defendants are held to be aware of statutes and regulations governing the activities of the Bank and to be responsible for knowingly causing the Bank to violate those laws. Therefore, when the obligation on the part of the Bank to file CTR's arose (this duty arose at the time the packages of currency in excess of $10,000 were *delivered* to the Bank—*see infra*), and the defendants allegedly caused the CTR's not to be filed, they became liable under 18 U.S.C. §§ 371, 1001 and 2 for conspiring with the Bank to defraud the United States, and for concealing a material fact from the Internal Revenue Service. It is irrelevant that defendants cannot be charged under the Reporting Act; the Bank can be so charged and defendants' actions in aiding and abetting the Bank bring them under the purview of other, totally separate laws.

Furthermore, it is clear that defendants were acting within the scope of their employment when they structured the transactions to avoid having the Bank file CTR's. First, regarding the January 26, 1983, transaction, when Kraselnick caused the $81,000 to be delivered to the Bank, he arguably may have been acting only as a "customer." However, once the $81,000 was delivered to the Bank, an obligation arose on the part of the Bank to file a CTR. This is because 31 C.F.R. § 103.11(*o*) defines a "transaction in currency" as "[a] transaction involving the physical transfer of currency from one person to another." Therefore, once Kraselnick delivered the currency to an official of the Bank (in this case the Chairman of the Board—himself) for deposit in the Bank, the transaction was complete and a CTR was required. Instead of seeing that the CTR was filed, however, Kraselnick instructed another

Bank employee (John Bjerke) to split up the funds into amounts below $10,000. It is simply inconceivable that Kraselnick could be found, as an agent of the Bank, not to have been aware of the existence of a transaction greater than $10,000 as he is the one, under color of his authority, who allegedly ordered it split it smaller amounts. *See Thompson*, 603 F.2d at 1202. In addition, Kraselnick, as an agent of the Bank, was aware that a customer of the Bank (once again, himself)[9] was attempting to cause the Bank to fail to file a CTR and he did nothing. Furthermore, the indictment alleges that Bart was part of the scheme to structure these funds and, therefore, knowledge of the transaction can be imputed to him, also as an agent of the Bank.

If the above reasoning appears to be too metaphysical, it is only because we are dealing with one person playing two separate roles. However, if a different customer had delivered $81,000 to the Bank and then Kraselnick had ordered it structured, he would surely be liable. The instant facts are essentially the same.

While the three subsequent transactions present a closer issue as the money was delivered to the Bank with deposit slips for amounts less than $10,000 already completed, the same reasoning should apply. In each case, a "transaction in currency" of more than $10,000 occurred and in each case no CTR was filed. As noted above, the "transaction" does not occur when the cash is deposited, but, rather, when delivery is accepted by the bank. Furthermore, defendant Bart was aware that more than $10,000 was delivered to the Bank (since he allegedly sent it) and, thus, as an agent of the Bank, he had a duty to see to it that a CTR was filed. Since the indictment alleges that these three transactions were accomplished "at the direction of" Kraselnick, he is also liable as an agent of the Bank.

Therefore, both Kraselnick and Bart can constitutionally be indicted for violating 18

---

9. An equally compelling scenario has the "Columbian Corporation" as the customer delivering the money to Kraselnick as an agent of the Bank for deposit in the Bank.

U.S.C. §§ 371, 1001 and 2 under the present facts.

### 2. *The Adequacy of the Indictment*

■ Defendant Bart alleges that the indictment fails to adequately state a criminal offense. This contention must fail as well. Defendant's arguments regarding this claim all rely on one basic premise: that he had no legal duty to disclose the currency transactions listed above. However, as discussed above, Bart did have a duty, as an agent of the Bank, not to prevent the filing of the CTR's. Because the indictment alleges that Bart "knowingly and wilfully" conspired to prevent and did prevent the Bank from filing CTR's, and because he had a legal duty not to so prevent the Bank, the indictment adequately charges a criminal offense.

### 3. *Whether the Government Withheld Substantial Exculpatory Evidence*

■ The defendants argue that the indictment should be dismissed due to the government's failure to present to the grand jury exculpatory evidence pertaining to the defendants' *mens rea.* They contend that, at the time the government presented evidence to the grand jury, it had "overwhelming proof" that defendants did not have the requisite specific intent to commit the crimes for which they have been charged. Specifically, defendants assert that the government had in its possession, at the time the grand jury was convened, testimonial and documentary evidence that defendants and other Bank officials believed that the transactions which form the basis of the instant indictment were not subject to the CTR reporting requirements.

The Third Circuit has expressly reserved on the issue of whether exculpatory material must be produced before a grand jury. *See United States v. Ismaili,* 828 F.2d 153, 165 n. 13 (3d Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 1110, 99 L.Ed.2d 271 (1988). The court in *Ismaili,* however, noted that the majority rule among the circuits is that the government has no duty to present exculpatory evidence to the grand jury. *See, e.g., United States v. Wilson,* 798 F.2d 509, 517 (1st Cir.1986); *United States v. Hawkins,* 765 F.2d 1482, 1488 (11th Cir.1985), *cert. denied,* 474 U.S. 1103, 106 S.Ct. 886, 88 L.Ed.2d 921 (1986); *United States v. Adamo,* 742 F.2d 927 (6th Cir.1984), *cert. denied,* 469 U.S. 1193, 105 S.Ct. 971, 83 L.Ed.2d 975 (1985); *United States v. Hyder,* 732 F.2d 841, 843–45 (11th Cir.1984); *United States v. Ciambrone,* 601 F.2d 616, 622 (2d Cir.1979). While there is a line of authority that holds that a prosecutor does have a duty to present exculpatory evidence of which he is aware to the grand jury, given the purpose of a grand jury, the majority of courts have established the better rule, and this court will follow it.

### 4. *Preaccusation Delay*

Defendants contend that as a result of the government's long delay in bringing this case (the indictment was handed down almost five years after the alleged offenses occurred and less than one week before the running of the statute of limitations), defendants have been denied their due process rights under the fifth amendment.

■ The standard for obtaining a dismissal of an indictment due to pre-indictment delay is a stringent one. The defendant bears the burden of proving that (1) the government intentionally delayed bringing the indictment in order to gain some advantage over him, and (2) that this intentional delay caused the defendant actual prejudice. *United States v. Marion,* 404 U.S. 307, 322, 92 S.Ct. 455, 464, 30 L.Ed.2d 468 (1971); *United States v. Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *United States v. Dukow,* 453 F.2d 1328 (3d Cir.), *cert. denied,* 406 U.S. 945, 92 S.Ct. 2042, 32 L.Ed.2d 331 (1972).

■ With regard to the first element of the test, defendants concede in their briefs that they cannot at the present time make a good-faith showing that the government's delay was intentional. Concerning the second element, defendants ask this court to grant them an evidentiary hearing at which time they intend to show that: (1) at least one key witness material to Bart's defense has died, (2) civil litigation and testimony

have substantially affected defendants' ability to call certain witnesses, (3) witnesses' memories have faded and (4) certain representations made to counsel for Bart by members of the United States Attorney's office have been ignored, leading to substantial prejudice in proving his defense. However, defendants have not shown how any of the above allegations, if proven, have caused them "actual prejudice." Therefore, defendants' motion to dismiss the indictment for unconstitutional preaccusation delay must be denied.

### B. *Defendants' Motion for Disclosure of Grand Jury Materials and for a Hearing*

■ Defendants have moved for an evidentiary hearing and for discovery of all grand jury testimony and exhibits. The general rule is that grand jury proceedings are to be kept secret. Fed.R.Crim.P. 6; *Dennis v. United States*, 384 U.S. 855, 867, 86 S.Ct. 1840, 1847, 16 L.Ed.2d 973 (1966). In the absence of a demonstration by defendants of a "particularized need" to gain access to said materials, the request must be denied. *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 683, 78 S.Ct. 983, 987, 2 L.Ed.2d 1077 (1958). The "particularized need" cannot be satisfied by mere speculation as to what *might* be revealed by inspection of grand jury materials. *United States v. Mahoney*, 495 F.Supp. 1270, 1273 (E.D.Pa.1980). What is needed, instead, is a demonstration by defendants of a "substantial likelihood of gross or prejudicial irregularities in the conduct of the grand jury." *United States v. Budzanoski*, 462 F.2d 443, 454 (3d Cir.), *cert. denied*, 409 U.S. 949, 93 S.Ct. 271, 34 L.Ed.2d 220 (1972). It is clear that defendants have not met this heavy burden; they have presented to this court little more than "mere speculation" as to what could be discovered by such disclosure. Therefore, their request must be denied.

### C. *Defendant's Request for Logs Showing Government is in Compliance with Financial Right to Privacy Act*

■ At oral argument on October 14, 1988, counsel for defendant Bart argued that inspection of the logs was necessary in order for her to establish a particularized need for the disclosure of grand jury materials. In the alternative, counsel stated that she would accept a representation from the government that it was in compliance with the Financial Right to Privacy Act. The government, however, appeared reluctant to comply with either request. This court finds defendant's claim to have merit, and, therefore, it is ordering the government to either produce the relevant logs for inspection or to represent that it is in compliance with the Act.

### D. *The Government's Pretrial Motions*

The government has moved (a) for an order precluding defendants from introducing evidence that should have been produced pursuant to the reciprocal discovery obligations of Rule 16(b); (b) for an order precluding defendant Bart from seeking *Bruton* redaction of his codefendant's statements; and (c) for an order, pursuant to Rule 26.2, requiring that prior statements of defense witnesses be identified and marked by defense counsel for production at or before trial. The government's motions are premature and, thus, must be dismissed.

■ First, the defendants' reciprocal discovery obligations under Fed.R.Crim.P. 16(b) do not arise unless and until the government has complied with its obligations under Rule 16(a). *See* Fed R. Crim. P. 16(b). Currently before the court are certain discovery motions of defendants which have left open the issue of the government's compliance with Rule 16(a). The resolution of those motions and compliance with the corresponding orders will trigger the defendants' reciprocal discovery obligations under Rule 16(b). At that point, therefore, the government may request discovery and defendants will be obliged to comply or face possible sanction by the court.

■ Second, the government has yet to provide defendant Bart with final drafts of statements of his codefendant, Kraselnick.

Until that time, defendant Bart has no obligation to seek redaction of Kraselnick's statements to conform with the mandate of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). It would simply be a waste of judicial resources for the defendant to seek *Bruton* redaction of a statement the content of which is still "subject to substantial correction" by the government. The government is urged to provide these final drafts as soon as possible so as not to delay the commencement of trial.

Finally, *United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1979), and Fed.R.Crim.P. 26.2 require defendants to produce relevant prior statements of defense witnesses (other than the defendant) once they have testified on direct examination at trial. While it is the preferred practice that such production take place earlier so as not to disrupt the flow of the trial, the defendants cannot be asked to produce such statements until they have decided who will be called as witnesses for the defense. This motion, therefore, is also premature and must be denied. The court does, however, request that all parties have *Jencks* material pre-marked and identified, *where possible*, so as to avoid undue delay at trial.

## III. CONCLUSION

For the reasons stated above, defendants' motions for dismissal of the indictment on multiple grounds and for disclosure of grand jury materials are denied in their entirety. In addition, the pretrial motions of the government are also denied. Finally, the motion by defendants for production of logs showing the United States to be in compliance with the Financial Right to Privacy Act is granted as modified in this opinion.

An appropriate order will be entered.

## ORDER

This matter having come before the court on the motion of defendants (1) for dismissal of the indictment on multiple grounds; (2) for disclosure of grand jury materials; (3) for logs showing the United States is in compliance with the Financial Right to Privacy Act; (4) to redact all references in the indictment to "Columbian" persons and corporations; (5) to compel the government to produce Rule 16 and *Brady* material; and (6) for an order allowing defendants to make further pretrial motions, and on the cross-motions of the government (a) for an order precluding defendants from introducing evidence that should have been produced pursuant to the reciprocal discovery obligations of Rule 16(b); (b) for an order precluding defendant Bart from seeking *Bruton* redaction of his codefendant's statements; and (c) for an order, pursuant to Rule 26.2, requiring that prior statements of defense witnesses be identified and marked by defense counsel for production at or before trial; and

The court having considered the submissions of the parties and heard arguments of counsel; and

For the reasons set forth in the court's opinion filed this date;

IT IS on this 1st day of December, 1988, hereby

ORDERED that the motions of defendants to redact all references in the indictment to "Columbian" persons and corporations, to compel the government to produce Rule 16 and *Brady* material and for an order allowing defendants to make further pretrial motions are GRANTED; and

It is FURTHER ORDERED that defendants' motions to dismiss the indictment and for the disclosure of grand jury materials are DENIED; and

It is FURTHER ORDERED that the government produce for defendants' inspection the logs relevant to its compliance with the Financial Right to Privacy Act with respect to these defendants or, in the alternative, represent to defendants that it is in compliance with the Act; and

It is FURTHER ORDERED that the government's motions are DENIED.