260 N.J. Super. 283 (1992)
615 A.2d 1293
STATE OF NEW JERSEY, PLAINTIFF,
v.
JAMES H. GAUGHRAN, DEFENDANT.
Superior Court of New Jersey, Law Division (Criminal) Hudson County.
Decided August 13, 1992.
*284 Patricia Hannington, Asst. Prosecutor Hudson County for plaintiff (Camen Messano, Hudson County Prosecutor).
George Campen for defendant.
*285 COSTELLO, J.S.C.
On January 12, 1992 the defendant, then age nineteen, was arrested and charged with sexually assaulting a seventeen year old female, F.M.
The victim's version is as follows: at 12:30 a.m. on January 12, 1992, she was at her girlfriend Dorothy Taylor's house when she left with the defendant, whom she had known for about nine months, and some other people. Prior to leaving, all had been drinking together. They drove around for a while and then all smoked marijuana in the defendant's car. Then the defendant dropped the others off at their homes, and invited the victim to go to his place of business in Hoboken to see a new litter of puppies. They talked for a while there and drank beer. Then the defendant pushed her onto a sofa-bed in the office and forcibly penetrated her anally with his finger and penis, and vaginally with his finger. He also forced her to perform fellatio and forcibly performed cunnilingus several times. She claims to have fought him throughout the assault which lasted roughly an hour and a half.
Afterwards, they both got dressed and the defendant drove the victim back to Ms. Taylor's house, who called the local police when advised of F.M.'s accusations.
Parenthetically, Ms. Taylor told the victim and the police that once before the defendant and she had been in his car together and that he wouldn't let her out.
The victim was then transported to the Jersey City Medical Center where a gynecological exam was performed at approximately 7:30 a.m. The Emergency Room notes read in part as follows:
No external marks on mouth, neck, breasts. Pelvic exam: NEG  no bruises, no lacerations, minimal erythema ext. genitalia, minimal mucoid discharge, CX small, not tender, uterus  small. Adnexae (-) Rectal  tight sphincter  no bruise.
On January 13, 1992 the defendant gave a sworn statement in which he said that he and the victim had consensually *286 engaged in fellatio and cunnilingus. He denied anal or vaginal penetration with either his finger or penis.
The State presented the matter to the Hudson County Grand Jury on March 11, 1992. During the course of the presentation Investigator Steven Moran testified:
Q  And did you also have an opportunity to take a statement from a woman by the name of Dorothy Taylor?
A  Yes, I did.
Q  And did Ms. Taylor indicate to you that she had had an incident with Mr. Gaughran herself, that she had been in a car with Mr. Gaughran and that he wouldn't let her out of the car?
A  Yes.[1]
The only mention of the gynecological exam was during the victim's testimony:
Q  And were you taken to the Jersey City Medical Center?
A  Yes, I was.
Q  And were you given a gynecological exam while you were there?
A  Yes.
The results of the exam were not given to the Grand Jurors. They were not given the defendant's statement. Nor were they advised of the drug use by the victim. They returned Indictment 491-92 charging the defendant with Sexual Assault, Criminal Restraint, and Criminal Sexual Contact.
The defense seeks dismissal of the indictment for prosecutorial misconduct for withholding exculpatory evidence, specifically the medical report, from the Grand Jury. The defendant contends the medical examination directly supports the defendant's version and directly contradicts the victim's version. The State concedes the report is exculpatory but argues it has no duty to present exculpatory evidence.
The Grand Jury system is deeply rooted in our history of jurisprudence. United States v. Calandra, 414 U.S. 338, 342, *287 94 S.Ct. 613, 617, 38 L.Ed.2d, 561, 568 (1974). It is embodied in both our Federal and State Constitutions. U.S. Const., Amend. V; N.J. Const. (1947) art. I, par. 8.
The Grand Jury performs a two-fold function: "it acts as a sword so that those who are suspected of wrongdoing may be properly brought to trial, and as a shield to protect the people from arbitrary prosecution." State v. Smith, et al., 102 N.J. Super. 325, 340, 246 A.2d 35 (Law Div. 1968). See also Wood v. Georgia, 370 U.S. 375, 390, 82 S.Ct. 1364, 1373, 8 L.Ed.2d 569, 580 (1962).
There is no question that the State presented sufficient evidence as to each element of the offenses charged in this indictment. See State v. Bennett, 194 N.J. Super. 231, 476 A.2d 833 (App.Div. 1984). The question here is, not one of sufficiency, but whether the Assistant Prosecutor's failure to present substantially exculpatory evidence gathered at the State's direction stripped the Grand Jury of its function to protect the innocent from unfounded prosecution. While there are numerous federal cases dealing with the prosecutor's duty to present exculpatory evidence to the Grand Jury, there are no reported New Jersey cases directly on point, so it appears that this is a case of first impression in this State.
In the federal system, the issue was most recently addressed in United States v. Williams, 504 U.S. ___, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992). A review of the federal split in circuits will be helpful.
On one side are the cases holding that the prosecutor does not have a duty to present any exculpatory evidence to the Grand Jury. United States v. Rivera-Santiago, 872 F.2d 1073 (1st Cir.1989) cert. den. Castro-Poupart v. United States, 492 U.S. 910, 109 S.Ct. 3227, 106 L.Ed.2d 576 cert. den. Romero-Lopez v. United States, 493 U.S. 832, 110 S.Ct. 105, 107 L.Ed.2d 68 (1989); United States v. Hawkins, 765 F.2d 1482, 1488 (11th Cir.1985), cert. den. 474 U.S. 1103, 106 S.Ct. 886, 88 L.Ed.2d 921 (1986); United States v. Adamo, 742 F.2d 927 (6th *288 Cir.1984), cert. den. 469 U.S. 1193, 105 S.Ct. 971, 83 L.Ed.2d 975 (1985); United States v. Sears, Roebuck & Co., Inc., 719 F.2d 1386, 1390-91, 1394 (9th Cir.1983), cert. den. 465 U.S. 1079, 104 S.Ct. 1441, 79 L.Ed.2d 762 (1984); United States v. Civella, 666 F.2d 1122 (8th Cir.1981); United States v. Kraselnick, 702 F. Supp. 480, 486 (D.N.J. 1988) [acknowledging that the 3rd Circuit Court of Appeals expressly reserved on the issue in United States v. Ismaili, 828 F.2d 153 (3rd Cir.1987), cert. den. 485 U.S. 935, 108 S.Ct. 1110, 99 L.Ed.2d 271 (1988)].
However, there is a line of authority holding that a prosecutor does have a duty to present exculpatory evidence of which he/she is aware to the Grand Jury. United States v. Casamento, 887 F.2d 1141 (2nd Cir.1989), cert. den. 493 U.S. 1081, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1989), cert. den. Greco v. United States, 495 U.S. 958, 110 S.Ct. 2564, 109 L.Ed.2d 746 (1990); United States v. Page, 808 F.2d 723, 728 (10th Cir.1987); United States v. Flomenhoft, 714 F.2d 708, 712 (7th Cir.1983) cert. den. 465 U.S. 1068, 104 S.Ct. 1420, 79 L.Ed.2d 745 (1984); United States v. Ciambrone, 601 F.2d 616, 622-23 (2d Cir.1979); State of New Jersey ex rel. Kudisch v. Overbeck, 618 F. Supp. 196, 201-202 (D.C.N.J. 1985); United States v. Litman, 547 F. Supp. 645, 649 (W.D.Pa. 1982); United States v. Gold, 470 F. Supp. 1336, 1353 (N.D.Ill. 1979); United States v. Phillips Petroleum Co., 435 F. Supp. 610, 618-622 (N.D.Okla. 1977). These cases emphasize that while the Grand Jury proceeding is not a minitrial to determine guilt or innocence where the accused is given an opportunity as of right to present his/her case, a prosecutor who withholds substantial exculpatory evidence which would have tended to negate probable cause, destroys the existence of an independent and informed jury. Without information material to its determination, they hold that the Grand Jury cannot protect citizens from malicious prosecution, and the interests of justice are not served.
This latter view was overturned in favor of the former in United States v. Williams, by a 5-4 decision. In Williams, the United States Supreme Court held that a trial court may not *289 dismiss an otherwise valid indictment because the government failed to disclose to the grand jury "substantial exculpatory evidence" in its possession: 504 U.S. ___, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992). The Court held that imposing that burden on the prosecutor
"... would neither preserve nor enhance the traditional functioning of the institution that the Fifth Amendment demands. To the contrary, requiring the prosecutor to present exculpatory as well as inculpatory evidence would alter the Grand Jury's historical role, transforming it from an accusatory to an adjudicatory body."
504 U.S. at ___, 112 S.Ct. at 1744, 118 L.Ed.2d at 368. Additionally, the Court held that since the "common law" of the Grand Jury did not require it to consider exculpatory evidence, the prosecutor cannot be obligated to present it. 504 U.S. at ___, 112 S.Ct. at 1745, 118 L.Ed.2d at 369. In short, the United States Supreme Court held that the Grand Jury process should not be subject to this depth of judicial scrutiny and supervision. This restrictive view of the judiciary's duty to supervise the fairness of Grand Jury proceedings has already been implicitly rejected by our Supreme Court in State v. Murphy, 110 N.J. 20, 538 A.2d 1235 (1988), in which the Court held it has an obligation to exercise supervisory authority over the selection of grand jurors to ensure a fair and unbiased panel and presentation.
In distinguishing Williams, it should be pointed out that our State Constitution "does not simply mirror its federal counterpart, but instead constitutes a basis for independent rights and protections that are available and applicable to the citizens of New Jersey." State v. Engel, 249 N.J. Super. 336, 366, 592 A.2d 572 (App.Div. 1991); State v. Mollica, 114 N.J. 329, 352, 554 A.2d 1315 (1989). In fact, in a variety of factual settings, our Supreme Court has found that the State Constitution accords protections that exceed those provided under the Federal Constitution. State v. Sanchez, 129 N.J. 261, 274-75, 609 A.2d 400 (1992) (post indictment interrogation of the defendant here violated his right to counsel under article 1, paragraph 10 of the New Jersey Constitution, giving greater protection to the defendant *290 than the virtually identical language in the Sixth Amendment to the United States Constitution); State v. Cofield, 127 N.J. 328, 334-35, 605 A.2d 230 (1992) (N.J.Evid. Rule 55 construed more narrowly against the State that the analogous federal evidence rule has been interpreted); State v. Mollica, 114 N.J. 329, 352, 554 A.2d 1315 (1989) (greater security in our Constitution than is available under the Federal Constitution with respect to the privacy interest in toll records of an individual's use of a telephone), see also State v. Hunt, 91 N.J. 338, 450 A.2d 952 (1982); State v. Gerald, 113 N.J. 40, 76, 549 A.2d 792 (1988) (Article 1 paragraph 12 of our State Constitution prohibiting cruel and unusual punishments affords greater protections to capital defendants than does the Eighth Amendment of the Federal Constitution); State v. Novembrino, 105 N.J. 95, 145, 519 A.2d 820 (1987) (Article 1, paragraph 7 of our State Constitution "affords our citizens greater protection against unreasonable searches and seizures than does the Fourth Amendment", therefore court refused to permit a good faith exception to the exclusionary rule); State v. Johnson, 68 N.J. 349, 353, 346 A.2d 66 (1975) (Article 1, paragraph 7 of New Jersey Constitution although taken almost verbatim from the Fourth Amendment, imposes a higher standard for validity of a consent to a search).
Continuing this tradition and in order to assure an independent and fair Grand Jury system in the State of New Jersey, it is essential that the jurors be informed of the relevant facts. The evidential impact of the medical report should not be underestimated. It directly contradicts the victim's claim of anal and vaginal penetration and does not support her claim of a one and a half hour struggle. The Grand Jurors could not have been expected to ask for the results of the medical exam. They were skillfully misled by omission into believing it had corroborated the victim's testimony. By withholding relevant and highly exculpatory evidence in its possession, the State treated this Grand Jury as its rubber stamp, its "playtoy". State v. Engel, supra, 249 N.J. Super. at 359, 592 A.2d 572 *291 (App.Div. 1991) and clearly infringed upon this Grand Jury's decision-making function, Cf. State v. Schamberg, 146 N.J. Super. 559, 370 A.2d 482 (App.Div. 1977) certif. den. 75 N.J. 10, 379 A.2d 241 (1977). In fact, given the nature of the medical report and its devastating impact on the presentation, the failure to present it can be termed an "intentional subversion" of the process. State v. Murphy, supra, 110 N.J. at 35, 538 A.2d 1235.
If a grave doubt exists that the Grand Jury's determination was made fairly and impartially, the indictment should be dismissed. State v. Engel, supra. That grave doubt exists here.
Accordingly, the indictment is dismissed. Counsel for the defense should submit an appropriate order.
NOTES
[1] While this irrelevant information in and of itself would not constitute a basis for the dismissal of an indictment, it should not be included in any representment. Cf. State v. Schamberg, 146 N.J. Super. 559, 370 A.2d 482 (App. Div. 1977).