799 A.2d 708 (2001)
352 N.J. Super. 178
STATE of New Jersey, Plaintiff,
v.
Jabar EVANS, Defendant.
Superior Court of New Jersey, Law Division, Hudson County.
Decided December 13, 2001.
*709 Tara L. Johnson, Assistant Prosecutor, for plaintiff (Fred J. Theemline, Jr., Prosecutor).
*710 John T. Booth, Assistant Deputy Public Defender, for defendant (Ivelisse Torres, Public Defender).
MESSANO, J.S.C.
Defendant, Jabar Evans, moves for dismissal of this Indictment, as against him, on the grounds that the State failed to present exculpatory evidence before the Grand Jury. The State has opposed the motion. This opinion is an expansion of an oral opinion rendered from the bench by this Court. For the reasons stated below, the motion to dismiss is denied.
The motion record discloses the following facts and procedural history. The State presented this matter to the Hudson County Grand Jury on June 5, 2001. The sole witness before the grand jury was Jersey City Police Sergeant Kevin O'Callahan. He testified that on January 29, 2001, he and other officers executed a search warrant at 25 Monticello Avenue, Apartment 8, in Jersey City. At the time the warrant was executed, defendant Evans, and co-defendants, Kasean Ross and Nashia Williams, were all present in the apartment. The officers recovered a plastic bag with approximately one ounce of suspected heroin along with four other bags of suspected heroin, two mirrors with residue, and two blenders with inside caps covered with residue. The police officers also recovered $1,103 in cash and various pieces of mail addressed to Jabar Evans and Nashia Williams at the apartment. The items seized were submitted to lab analysis and proved to be positive for heroin. The officer also testified that based upon his training and expertise it was his opinion that the three individuals were working together to distribute the heroin seized. The grand jury returned an indictment charging all three defendants with Possession of Heroin, Possession of Heroin with Intent to Distribute, Possession of Heroin with Intent to Distribute within 1000' of School Property, and Conspiracy to Distribute Heroin.
Prior to the presentation of the matter to the grand jury, by letter dated March 6, 2001, Evans' counsel supplied the State with a copy of a notarized "letter", allegedly authored by the co-defendant Ross. In his cover letter, Evans' counsel notes that his client had recently pled guilty to drug charges, on January 18, 2001, "in return for a sentencing recommendation of three years of incarceration." In the enclosed "letter", Ross claimed full responsibility for the heroin recovered on January 29th, and he further stated that Evans had no knowledge of the heroin found in the apartment. Defense counsel further requested that the Ross "letter", which he characterized as "exculpatory information", be provided to the grand jury when the case was presented. The Ross "letter" was not presented to the grand jurors.[1] The Court takes judicial notice of the fact that as of March 6, 2001, Evans had not yet been sentenced on his plea of guilty entered on January 18th.
The Ross "letter" is written on what appears to be a pre-printed form from the Hudson County Jail entitled "Inmate Request Form". It is dated February 1, 2001, and is addressed to the Judge who was then handling the matter. Above the form's space requiring the inmate's name and number are written the names, "Jabar Evans/Kasean Ross", and two inmate numbers. The entire message on the form is as follows: "I, Kasean Ross, will (sic) like *711 to make an oral and written statement that Jabar Evan (sic) had no knowledge of the drugs in the house. I will (sic) like to take full responsibility of the controlled dangerous substances that was (sic) found in the house of 25 Monticello Ave. Apt-8 on January 29, 2001." It bears a signature purporting to be that of Ross and is notarized by a Margaret Hatcher, a Notary Public. As of the date of the letter, both Ross and Evans were incarcerated at the Hudson County Jail as a result of the January 29th arrest.[2]
Defendant Evans argues that the signed statement is exculpatory evidence, which clearly negates his guilt and which the State was obligated to provide to the grand jurors pursuant to the holding of State v. Hogan, 144 N.J. 216, 676 A.2d 533 (1996). The failure to do so, it is argued, requires dismissal of the indictment against Evans. The State admits that the Ross "letter" was not provided to the grand jury, but argues that it was not required to do so. Whether the State is obligated to disclose to the grand jury a notarized, written statement, in its possession, purportedly made by one co-defendant, which claims complete responsibility for the crime to the exclusion of a co-defendant, is an issue not yet resolved by our Courts.[3]
Prior to the holding in Hogan, the dismissal of an indictment based upon the acts or omissions of the prosecutor before the grand jury was reserved for the most unusual and egregious patterns of conduct. In general, where the error or deficiency in the proceedings had the power to affect the grand jurors' ability to make an informed decision whether to indict, the courts were more likely to intervene by way of judicial review. State v. Engel, 249 N.J.Super. 336, 360-61, 592 A.2d 572 (App. Div.1991) (reviewing a series of erroneous prosecutorial statements and instructions to the grand jurors), certif. denied, 130 N.J. 393, 614 A.2d 616 (1991); State v. Murphy, 110 N.J. 20, 35, 538 A.2d 1235 (1988) (reviewing prosecutors' failure to follow grand jury procedures involving the potential bias of a deliberating grand juror); State v. Schamberg, 146 N.J.Super. 559, 564, 370 A.2d 482 (App.Div.1977) (reviewing prosecutor's statement made to witness testifying before the grand jury that prosecutor believed the witness had just committed perjury), certif. denied, 75 N.J. 10, 379 A.2d 241 (1977); State v. Hart, 139 N.J.Super. 565, 354 A.2d 679 (App.Div.1976) (reviewing prosecutor's statement of personal belief that grand jurors had erred in failing to indict defendant, resulting in reconsideration and subsequent indictment). However, such judicial review rarely resulted in a conclusion that the underlying indictment should be dismissed because of prosecutorial misconduct.[4] Our courts continued to recognize the "grand jury's independence and ... expressed a reluctance to intervene in the *712 indictment process." Hogan, supra, 144 N.J. at 228, 676 A.2d 533.
The first reported case in New Jersey which characterized the non-disclosure of exculpatory evidence as prosecutorial misconduct was State v. Gaughran, 260 N.J.Super. 283, 615 A.2d 1293 (Law Div. 1992). There, the trial court dismissed an indictment charging the defendant with sexual assault and related charges. The alleged victim testified before the grand jury that the defendant had forcibly penetrated her vaginally and anally during an assault that lasted some ninety minutes. Id. at 285, 615 A.2d 1293. She claimed to have fought the defendant throughout the assault. Ibid. During her testimony, she was asked whether she had been taken to the hospital after the assault and gynecologically examined. Id. at 286, 615 A.2d 1293. She responded simply in the affirmative. Ibid. In fact, the assistant prosecutor possessed the results of the medical examination performed on the victim at the hospital which demonstrated no evidence of any physical or sexual assault. Id. at 285-87, 615 A.2d 1293. Recognizing numerous federal cases dealing with the obligation of the government to present exculpatory evidence to the grand jury, and a well-recognized split among the federal circuits, the court noted "there (were) no reported New Jersey case directly on point." Gaughran, 260 N.J.Super. at 287, 615 A.2d 1293. Relying on independent New Jersey Constitutional grounds, the court dismissed the indictment. Id. at 289-90, 615 A.2d 1293. The Court concluded that the victim's reference to the medical examination, combined with the withholding of the "highly exculpatory" medical report, "skillfully misled" the grand jury into believing that it corroborated her testimony. Id. at 290, 615 A.2d 1293. The court found the failure to present the medical report was the equivalent of the "intentional subversion" of the grand jury process. Id. at 290-91, 615 A.2d 1293, citing Murphy, supra, 110 N.J. at 35, 538 A.2d 1235.
Subsequently, in State v. Smith, 269 N.J.Super. 86, 634 A.2d 576 (App.Div. 1993), the court refused to reverse a defendant's conviction for armed robbery and related offenses based upon the failure of the trial court to dismiss the underlying indictment prior to trial. Prior to the presentation of the matter to the grand jury, defense counsel had provided the State with the statements of three witnesses, all of whom placed the defendant in an intoxicated state at some place other than the crime scene, albeit some one and one-half to three hours prior to the robbery. Id. at 91, 634 A.2d 576. The State failed to introduce any of the statements before the grand jury. Ibid. Once again, recognizing the split among federal circuits and state jurisdictions as to the obligation of the prosecutor to present exculpatory evidence to a grand jury, the court concluded as a matter of New Jersey constitutional law that the prosecutor's "responsibility must encompass the obligation to give the grand jury evidence in the prosecutor's possession which clearly exculpates a defendant, that is, evidence that directly negates a defendant's guilt." Id. at 93, 634 A.2d 576. Citing to commentators in the field, the court noted that this standard would still limit dismissals of indictments for non-disclosure to those exceptional cases where evidence that directly negated guilt would also withstand judicial scrutiny of its likely reliability. Id. at 96-97, 634 A.2d 576, citing to LaFave & Isreal, 2 Criminal Procedure § 15.4(d) at 319 (1991). The court then concluded that the three statements at issue, because they did not relate to the time of the robbery itself, did not negate the defendant's guilt, and as such were properly withheld from the *713 grand jurors. Smith, 269 N.J.Super. at 97-98, 634 A.2d 576.
It was against this limited precedential landscape that Hogan, supra, was decided. After conviction for armed robbery and assorted offenses, defendant appealed, contending, among other things, that the trial court had erred in refusing to dismiss the indictment. Defendant argued that the State's main witness and victim had recanted her identification of defendant as her assailant in a statement given to representatives of the public defender's office. Id. at 223, 676 A.2d 533. Subsequent to the recantation, and prior to trial, the witness had reaffirmed her original identification of the defendant to members of the prosecutor's office, blaming her recantation upon her fear of defendant and his family. Id. at 224, 676 A.2d 533. Defense counsel specifically requested that the recantation be provided to the grand jurors; the prosecution refused. Id. at 225, 676 A.2d 533. The motion to dismiss was denied by the trial court. Id. at 226, 676 A.2d 533. At trial, all versions of the victim's statements were introduced into evidence before the jury and defendant was convicted of most crimes charged in the indictment. Ibid.
The Appellate Division reversed defendant's conviction on the specific ground that the pre-trial motion to dismiss the indictment should have been granted. State v. Hogan, 281 N.J.Super. 285, 657 A.2d 462 (1995). Interpreting the Smith standard to require the prosecutor to present all evidence which, if believed by the grand jurors, would establish the defendant did not commit the crime, the court concluded that the recantation evidence was indeed such evidence and should have been presented. Hogan, supra., 281 N.J.Super. at 295, 657 A.2d 462.
Our Supreme Court granted the State's petition for certification. State v. Hogan, 144 N.J. 216, 676 A.2d 533 (1996). After reviewing the historical antecedents of the grand jury system, its functions, and the role of the prosecutor therein, the Court reversed the Appellate Division's decision. Noting that the standard enunciated in Smith required an evaluation of the reliability of the alleged exculpatory evidence, and the failure on the part of the court below to conduct any such evaluation, the Court characterized the decision below as one which reflected "an unwarranted expansion of the prosecutorial duty set forth in Smith." Hogan, supra, 144 N.J. at 235, 676 A.2d 533. It ultimately refined the Smith standard, holding that a prosecutor's duty to present evidence to a grand jury arises only if the prosecutor knows of evidence that satisfies two requirements: it directly negates the guilt of the accused; and it is clearly exculpatory. Hogan, supra, 144 N.J. at 237, 676 A.2d 533.
The Court found that the first requirement is met only if the evidence squarely refutes an element of the crime in question. Ibid. As to the second requirement, the Court concluded that a determination as to whether evidence is "clearly exculpatory" requires an evaluation of its quality and reliability. Ibid. "The exculpatory value of the evidence should be analyzed in the context of the nature and source of the evidence, and the strength of the State's case." Ibid.
The Court then considered this second requirement in relation to certain general types of evidence. Exculpatory eyewitness testimony may not be "clearly exculpatory" if the witness is potentially biased or contradicted by other eyewitness testimony that incriminates the defendant. Hogan, supra, 144 N.J. at 238, 676 A.2d 533. Self-serving statements of the accused would not be sufficiently credible to be "clearly exculpatory". Ibid. Conversely, credible testimony of an unbiased alibi *714 witness, or reliable physical evidence, citing to Gaughran, would be examples of "clearly exculpatory" evidence. Hogan, supra, 144 N.J. at 238, 676 A.2d 533. In recognizing the balance between the role of the prosecutor and the discretion to be accorded to the executive function, and the obligation of the Court to safeguard the vital protective function performed by the grand jury, the Court stated: "(C)ourts should dismiss indictments on this ground only after giving due regard to the prosecutor's own evaluation of whether the evidence in question is `clearly exculpatory'. Ascertaining the exculpatory value of evidence at such an early stage of the proceedings can be difficult ... and courts should act with substantial caution before concluding that a prosecutor's decision in that regard was erroneous. We emphasize that only in the exceptional case will a prosecutor's failure to present exculpatory evidence to a grand jury constitute grounds for challenging an indictment." Id. at 238-39, 676 A.2d 533. The Court then concluded that the recantation testimony at issue, recognized as unreliable in general, and likely the specific product of threats and coercion under the particular facts of the case, was not "clearly exculpatory"; thus, its non-disclosure to the grand jury was not misconduct on the part of the prosecutor. Ibid.
The decision in Hogan firmly established New Jersey as a jurisdiction in which the prosecutor has a limited duty to present evidence of an exculpatory nature to the grand jury. Other state jurisdictions have split on both sides of our Court's middle ground, some adopting a standard imposing a broad, absolute duty on the prosecutor to disclose such information, others adopting a standard that imposes no duty whatsoever upon the prosecutor. See. Sharen N. Humble, J.D., Annotation, Duty of Prosecutor to Present Exculpatory Evidence to State Grand Jury, 49 A.L.R. 5th 639 (1997). Since Hogan, a number of reported cases have examined specific types of evidence in light of the standard enunciated by the Supreme Court, but none have done so with respect to facts similar to those now before this court.
In State v. Womack, 145 N.J. 576, 679 A.2d 606 (1996), the defendant was charged with practicing medicine without a license in violation of N.J.S.A. 2C:21-20 (a) and (c). The principal investigating agent from the Enforcement Bureau of the Division of Consumer Affairs testified before the grand jury as to his contacts with the defendant while in an apparent undercover capacity. Womack, supra, 145 N.J. at 587, 679 A.2d 606. The agent, however, failed to testify that the defendant made him sign a disclaimer which extensively set forth that the defendant was a "naturopath" and not a medical doctor. Ibid. The Court dismissed only that portion of the indictment pertaining to subsection (C) of the statute which prohibits one from "hold(ing) himself out to the public or any person as being eligible to engage in that practice (of medicine)." The Court reasoned that the non-disclosed evidence, ie. a written form defendant provided which clearly indicated that he was not a medical doctor, met the requirements of the standard set forth in Hogan. Womack, supra, 145 N.J. at 588, 679 A.2d 606. The evidence that the defendant disclosed his professional status to the investigator "flatly contradicts the principle element of (the) charge. Because the evidence was clearly exculpatory, highly reliable, and known by the prosecutor, that evidence should have been submitted to the grand jury. The failure to do so requires dismissal of that portion of the indictment." Id. at 589, 679 A.2d 606. In State v. Scherzer, 301 N.J.Super. 363, 426, 694 A.2d 196 (App. Div.1997), the court rejected an argument *715 that the underlying indictment should have been dismissed by the trial court because of the prosecutor's failure to introduce exculpatory evidence before the grand jury. The evidence at issue was the testimony of two defense experts who had testified at the juvenile court waiver hearing. Id. at 426, 694 A.2d 196. Although finding the testimony directly negated an element of the offense charged, the court concluded it was not clearly exculpatory noting its introduction would have required the grand jurors to make credibility judgments. Id. at 427, 694 A.2d 196. Lastly, in State v. Cook, 330 N.J.Super. 395, 750 A.2d 91 (App.Div.2000), during the course of a homicide investigation, two eyewitnesses identified someone other than the defendant as the perpetrator of the crimes. The prosecutor did not present that evidence to the grand jury. Defendant argued that his motion to dismiss the indictment should have been granted by the trial judge because the identifications of another as the perpetrator were clearly exculpatory evidence under the Hogan standard. Cook, supra., 330 N.J.Super. at 410, 750 A.2d 91. The court rejected defendant's argument concluding the identifications of others were not clearly exculpatory because "they were contradicted by the testimony of three other witnesses who clearly identified the defendant as the perpetrator of the murder and robbery." Id. at 410-11, 750 A.2d 91. Noting that "(t)he sole issue before the grand jury is the determination of whether a prima facie case of guilt has been presented ...", the court concluded that the testimony of those who positively identified the defendant was sufficient in light of the strengths of the state's case and the nature of the exculpatory evidence, thus the motion to dismiss the indictment was properly denied by the trial court. Ibid.
Our courts have yet to decide whether statements of a co-defendant, exculpating his co-defendant while incriminating himself, are "clearly exculpatory" under the Hogan standard. A review of the reported decisions of other state courts and federal circuits reveals that the issue under similar factual circumstances has presented itself in surprisingly few instances and with mixed results. In United States v. Leonard, 817 F.Supp. 286 (E.D.N.Y.1992), the court rejected motions to dismiss the indictment brought by two co-defendants, Brown and Papajohn, based upon the failure by the government to present exculpatory evidence to the grand jury. The evidence in question was the proffered testimony of a co-defendant (Leonard) that, if allowed, he would have testified before the grand jury that Brown was not involved in the conspiracy charged; in the second instance, the evidence was a statement given by another co-defendant (Seyfert), that Papajohn was not involved in certain transactions charged in the indictment. Id. at 296. The court applied the then-existing standard of the Second Circuit which required a prosecutor to present evidence to the grand jury only if it was both substantial and might reasonably be expected to lead the grand jury not to indict. Id. at 295, citing United States v. Ciambrone, 601 F.2d 616, 623 (2d Cir. 1979). The court concluded that the evidence in question was not "substantially exculpatory" primarily because it was impeached by other evidence in the government's case which directly implicated both of the moving defendants. Leonard, supra, at 296.
The opposite result was reached in United States v. Short, 777 F.Supp. 40 (D.D.C. 1991). The police seized drugs under the floor mat of the driver's side of a car driven by defendant, Short, and in which co-defendant Green was a front-seat passenger. Id. at 41. In the station house, Short gave a signed statement to the police *716 telling them where he had purchased the drugs and indicating that they did not belong to Green. Id. At the grand jury, the police officer testified that Short had admitted to knowing the drugs were in the car and that they were his drugs. Id. The officer was not asked any further questions about the other portion of Short's statement in which he exonerated Green. Finding the omitted testimony to be "substantial exculpatory evidence", the court dismissed the indictment as against Green. Id. at 42-43. In discussing the split among the federal circuits, the court concluded that the appropriate standard to be applied was that adopted by some circuits which required disclosure to the grand jury of evidence that clearly negates guilt, and noted that the government's presentation to the grand jury must be based upon the essential elements of the offense. Id. at 42.[5]
Lastly, in People v. Abbatiello, 129 Misc.2d 831, 494 N.Y.S.2d 625 (N.Y.Sup. Ct.1985), the trial court dismissed an indictment under the following factual circumstances. Detectives stopped defendant, Abbatiello's, station wagon for reasons undisclosed in the reported opinion. Defendant, and co-defendant Godfrey were in the car. Id. at 627. As the police approached, a bag containing guns was observed in Abbatiello's hands. Ibid. No guns or ammunition were found on Godfrey, and the police saw no movement on his part toward the bag of weapons. Ibid. At some point not fully disclosed by the opinion, Abbatiello stated to the police: "Why are you taking him (Godfrey)? They're (the guns) mine." Ibid. This statement was known to the prosecutor who did not present it to the grand jury. Godfrey then moved for dismissal of the indictment. The court noted that a district attorney is required to submit exculpatory evidence to a grand jury only if it is "so important as to materially influence the grand jury's investigation, or its introduction would possibly cause the grand jury to change its findings." Ibid. The court noted the statutory presumption that existed in New York which permitted an inference that all passengers in a motor vehicle possessed weapons found therein, characterizing it as the only evidence against Godfrey. Abbatiello, 494 N.Y.S.2d at 627. Nonetheless, it concluded that the presumption should not be extended where the police had actually observed the weapons in the physical possession of another of the auto's occupants. Id. at 628. Since the presumption was so tenuous, the court reasoned that Abbatiello's statement to the police was of such moment that it should have been submitted to the grand jurors. Ibid.
All three of the above cases are of limited value to the analysis which this court must now apply to the facts at hand. Nonetheless, it would appear that under any standard utilized, careful scrutiny of the nature and reliability of the alleged exculpatory evidence, as well as the other evidence in the case then available to the prosecution, is required before an indictment is dismissed by the court on the grounds of non-disclosure of such evidence *717 to the grand jury. In fact, Hogan requires such an analysis.
Initially, the court concludes that Ross' letter is evidence that negates the guilt of Evans. In it, Ross claims that Evans "had no knowledge of the drugs in the house." The crimes for which Evans was indicted all require that his possession be a knowing one. N.J.S.A. 2C: 35-5, 35-7, 35-10. The conspiracy charge requires that the defendant have a purpose to promote the crime charged as the conspiracy's object. N.J.S.A. 2C: 5-2. The statement made by Ross, therefore, would serve to negate one of the essential elements of all of the crimes charged.
In addition, there is nothing in the presentation of the facts as made to the grand jury that would serve to demonstrate any particularized knowledge on the part of Evans with respect to the drugs found in the apartment. For example, the presentation is so scant that the grand jurors were not supplied with any information regarding the location of the drugs within the apartment, or any actions on the part of Evans when the police actually executed the search warrant which might demonstrate particularized knowledge. The only fact presented, beyond Evans' presence at the scene, was that mail in his name was found at the premises. It would be only through the application of the concepts of joint and constructive possession that the State could be deemed to have presented sufficient evidence to the grand jurors. In this sense, the statement contained in Ross' letter would serve to directly negate the requisite mental states alleged in all counts of the indictment.
The Hogan standard, however, requires that the undisclosed evidence also be "clearly exculpatory". In discussing the "vital, protective function" of the grand jury, the Hogan court stated the grand jury cannot be denied access to evidence that is "credible, material, and so clearly exculpatory as to induce a rational grand juror to conclude that the State has not made out a prima facie case against the accused." Hogan, supra, 144 N.J. at 236, 676 A.2d 533. Materiality seems to have been addressed by way of the first prong of the Hogan standard, ie., the evidence must negate an essential element of the offense. The court seemingly addressed the quantum of such exculpatory evidence, or, put another way, the burden a successful movant must bear, by indicating that it must be so weighty that a rational grand juror would necessarily conclude that the prosecution failed to meet its extremely modest burden.
The term "clearly exculpatory", however, is not defined with any precision by the court, nor has it been so defined by any of our courts since Hogan was decided. However, a close examination of Hogan and what has followed may, by implication, help to define what is evidence that is "clearly exculpatory" and must be disclosed to the grand jury. "Clearly exculpatory" evidence is not evidence that, on its face, if presented to and believed by the grand jurors, would have negated defendant's guilt or might have led the grand jurors not to indict the defendant. Such a standard would require the reviewing court to accept the evidence as true, and then determine whether it and, presumably any favorable inferences therefrom, might lead a reasonable grand juror not to indict. Such a broad standard was clearly rejected by the Hogan court. In reviewing the appellate decision from below, and the opinion in State v. Epps, 284 N.J.Super., 373, 665 A.2d 412 (Law Div.1995), the court noted that both decisions failed to assess the reliability of the exculpatory evidence. "Clearly exculpatory" evidence, therefore, must carry with it some indicia of reliability. For example, it was the *718 reliability of hospital reports regarding physical evidence, or lack thereof, which the Hogan court acknowledged in citing with approval the decision in Gaughran, supra. In Womack, supra, it was the reliability of a printed form, supplied by the defendant himself to the undercover agent, in which defendant advised the public that he was not a licensed medical doctor. Excepting any issue of authenticity, this type of evidence is capable of complete consideration by the grand jury without the need of any extrinsic information also being supplied.
"Clearly exculpatory" evidence is also evidence which does not require the grand jurors to engage in any extensive weighing of credibility factors that could substantially affect the value of the evidence. Any evidence that requires such a process would serve to alter the well-recognized function of the grand jury, transforming it from an accusative, to an adjudicative, body. See United States v. Williams, 504 U.S. 36, 112 S.Ct. 1735, 118 L. Ed.2d 352 (1992); United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L. Ed.2d 561 (1974); State v. Weleck, 10 N.J. 355, 91 A.2d 751 (1952); State v. New Jersey Trade Waste Ass'n, 96 N.J. 8, 472 A.2d 1050 (1984). "Clearly exculpatory" evidence, therefore, must bear some significant stamp of credibility, in and of itself, and not merely be contradictory of the state's other proofs. Conflicting eyewitness testimony cannot be clearly exculpatory, therefore, because it would require an assessment by the grand jurors of the credibility of the various witnesses, their opportunity to observe, recall and recollect the events as stated in their conflicting testimony. It might require an examination of whether the eyewitness was biased or motivated toward the prosecutor or the defendant. Hogan, supra, 144 N.J. at 237-38, 676 A.2d 533. And, see generally, Cook, supra, 330 N.J.Super. 395, 750 A.2d 91 (App.Div.2000), and Smith, supra, 269 N.J.Super. 86, 634 A.2d 576 (App.Div. 1993). It is this recognition of the grand jury's limited role in assessing, and judging, the credibility of competing witnesses which also compelled the court in Scherzer, supra, 301 N.J.Super., at 427, 694 A.2d 196, to conclude that exculpatory, expert testimony need not be presented.
Evidence that is so clearly biased, based upon its source, also cannot be "clearly exculpatory". The introduction before the grand jury of such evidence, merely because it was exculpatory on its face, would require, once again, a significant and fundamental alteration of the grand jury's function. Compelling the prosecutor to introduce such evidence, particularly when the knowledge of the witness' bias may be known to the state but unknown to others, would require the prosecutor to present other evidence which exposed the bias of the witness, or run the risk that the grand jurors might not indict the target defendant. Such a scenario would be an invitation to have the grand jurors judge the credibility of witnesses and was clearly rejected by the Hogan court. It concluded that bias on the part of an eyewitness might negate the prosecutorial obligation to present such evidence to the grand jury. Id. at 237-38, 676 A.2d 533. Evidence that is so clearly biased based upon its source, eg. a defendant's self-serving exculpatory statement, is also not "clearly exculpatory" for similar reasons. If the prosecutor was required to introduce such evidence, it would be unassailable except for an invitation to assess its credibility based upon the obvious interest of the source, the defendant, in the outcome of the deliberations. In addition, since the defendant could not be compelled to appear before the grand jury, the prosecution would be severely *719 disadvantaged by being required to present defendant's evidence in exculpation, while being unable to secure the presence of the actual source of the information before that body. (See Justice Scalia's discussion of a similar conundrum in Williams, supra, 504 U.S. at 52, 112 S.Ct. at 1745, 118 L.Ed.2d at 368-69 (1992)).
In short, it would seem that "clearly exculpatory" evidence must be sufficiently reliable and bear some indicia of credibility in its own right. Furthermore, in order to be fairly assessed, its introduction cannot require the grand jury to engage in significant credibility determinations. Lastly, in a general sense, whether seen as a component of a definition of "clearly exculpatory", or viewed as an assessment of the weight to be accorded such evidence, it is clear that the failure to disclose the evidence must be tantamount to a resulting "distorted version of the facts", or, "(interference) with the grand jury's decision-making function", or "raise questions about the prosecuting attorney's good faith", or "deprive the grand jury of their opportunity to screen out unwarranted prosecutions." Hogan, supra, 144 N.J. at 236, 238, 676 A.2d 533. In sum, the prosecutorial obligation to present the allegedly exculpatory evidence, which finds it source in our state constitution and the court's inherent power to remedy grand jury injustices and abuses, only exists as a counterbalance to prosecutorial misconduct.
We turn now to the consideration of the evidence alleged to be "clearly exculpatory" in this matter. Ross' written statement is without question a statement against his own interests and would be clearly admissible at trial pursuant to N.J.R.E. 803(c)(25), assuming it was properly authenticated as being his own statement. In all likelihood, whether tried jointly or separately, the statement would be admissible in its entirety before any jury considering the guilt of Evans. As an evidential trial issue, similar situations have been addressed on numerous occasions. See, State v. White, 158 N.J. 230, 729 A.2d 31 (1999); State v. Gaines, 147 N.J.Super., 84, 370 A.2d 856 (App.Div. 1975), aff'd o.b. sub nom., State v. Powers, 72 N.J. 346, 370 A.2d 854 (1977); State v. Abrams, 140 N.J.Super. 232, 356 A.2d 26 (App.Div.1976), aff'd o.b. 72 N.J. 342, 370 A.2d 852 (1977); State v. Reed, 332 N.J.Super. 575, 753 A.2d 1247 (Law Div. 2000); State v. Bell, 249 N.J.Super. 506, 592 A.2d 657 (Law Div.1991). In White, the court rejected any notion that a statement, otherwise admissible against the declarant pursuant to N.J.R.E. 803(c)(25), needed extrinsic corroborative circumstances indicative of trustworthiness in order to be admissible. White, supra, 158 N.J. at 240, 729 A.2d 31. The self-incriminating character of the statement itself must be examined to determine its reliability, and, if admissible under the evidence rule, any exculpatory portions of the statement made by the declarant should normally also be admitted. Id., at 243-44, 729 A.2d 31. Without question, Ross' letter would be sufficiently inculpatory, and "so far contrary" to his interests, that it would be admissible against him, and admissible in support of Evans' general denial of guilt.
However, the conclusion that certain evidence would be admissible at trial in order to exculpate a defendant does not compel the conclusion that it must be "clearly exculpatory" and must be presented to a grand jury. While the Court in White found such evidence to be inherently reliable without regard to extrinsic factors, it recognized that "many issues regarding the trustworthiness and veracity of (declarant's) exculpation of (another) remain." Id., at 246, 729 A.2d 31. The Court noted, *720 "[o]nce the declarant's out-of-court incriminating statement is admitted into evidence, the jury must determine the statement's probative worth. The jury should undertake an unfettered and full consideration of all the circumstances surrounding the declarant's confession and disregard the statement or any part thereof if it finds the statement not credible." Ibid. Such circumstances included: the declarant (who was not identified by the victim and who had never been charged with the crime) knew the defendant he exculpated for a long time; that at the time of the exculpatory statement, declarant was serving a ten year sentence for a prior aggravated assault; and, that there were multiple perpetrators of the crime, some of whom the victim had identified, and some who remained unidentified. Id., at 246-47, 729 A.2d 31.
Of course, any "unfettered and full consideration of all the circumstances surrounding" Ross' letter of February 1st would produce a similar laundry list of items that would affect its credibility. It was made while both he and Evans were in jail. The document itself lists both names, along with one jail location, implying that they were in close proximity while incarcerated. There is no indication that it was made after Ross had any meaningful discussion with counsel. When made, Evans had recently pled guilty to another charge. He was awaiting sentence pursuant to a plea bargain which presumably guaranteed a favorable sentence recommendation from the State and which might be jeopardized if he were to be convicted of another drug offense. Although notarized, the circumstances surrounding the statement and whether Ross had been threatened or coerced into making it are not disclosed by the contents of the letter itself; and, parenthetically, those circumstances would be incapable of being investigated by the State since Ross retained his rights against self-incrimination and his appearance before the grand jury could not be compelled unless those rights were waived.[6]
Thus, if the introduction of Ross' letter before the grand jury was compelled because it was "clearly exculpatory", that body would be required to assess numerous intrinsic and extrinsic factors in order to determine whether the letter's contents were credible. The letter would negate Evans' guilt of the crimes charged only if it contents were credible. Such a scenario would require the grand jury to conduct itself as a petit jury, adjudicating the guilt of one of the parties charged. It would thwart the grand jury's well-recognized mission, which is to determine whether the prosecutor has presented sufficient evidence of a prima facie case that the accused has committed a crime. Hogan, supra, 144 N.J. at 235-36, 676 A.2d 533; Cook, supra, 330 N.J.Super. at 410, 750 A.2d 91.
Additionally, for this court to conclude that inculpatory statements given by one co-defendant, which contain exculpatory evidence as to another, are, in a generic sense, "clearly exculpatory" is an invitation to mischief which the Hogan court clearly would not have condoned. Situations in which one party was facing significantly more severe penalties than the other, for example, might facilitate the exculpation of one at the inculpatory expense of the other. For example, a juvenile co-defendant, facing lesser, non-mandatory penalties in a *721 particular case, may inculpate himself and exculpate an adult, co-defendant, who faces more serious, mandatory penalties. Family members who are charged with crimes as co-defendants might have personal motives for the exculpation of one and the inculpation of the other. Other situations can easily be conceived.
Although the Ross letter may directly negate the guilt of his co-defendant, Evans, it is not evidence that is clearly exculpatory. As such, it was not required to be produced by the prosecutor to the grand jury considering whether or not to indict Evans for these crimes now charged. Therefore, the failure on the part of the State to introduce the Ross letter to the grand jury was not prosecutorial misconduct, and the motion to dismiss the indictment on those grounds is therefore denied.
NOTES
[1] Although Evans' counsel's letter was sent to the Assistant Prosecutor who was then handling the file, a different Assistant Prosecutor actually presented the case to the grand jury. However, the State has not denied that it had actual knowledge and possession of the copy of Ross' correspondence at the time of the grand jury presentation.
[2] Whether either Evans or Ross consulted counsel prior to the generation of the February 1st "letter" is undisclosed by the record. Since it was in such close proximity to the date of arrest, it is likely that both were represented by the Office of the Public Defender at the time and had, at most, appeared before the Central Judicial Processing Court Judge for an initial appearance and the setting of bail.
[3] Although Ross was present, with counsel, at the motion hearing, he did not join in the motion, supplied no support to it, and did not participate in oral argument. Therefore, the record at the time of this motion reflects no other additional information from Ross regarding the "letter" or the circumstances of its creation or distribution.
[4] Of the cases cited, only Hart resulted in a decision dismissing the underlying indictment based upon such misconduct.
[5] Both decisions predate United States v. Williams, 504 U.S. 36, 112 S.Ct. 1735, 118 L. Ed.2d 352 (1992). In a 5-4 decision, the United States Supreme Court concluded that as a matter of federal constitutional law and procedure, courts lacked the authority to compel the prosecutor to disclose exculpatory testimony to the grand jury. In doing so, it reversed the holding of the Tenth Circuit. United States v. Williams, 899 F.2d 898 (10th Cir.1990). The Short court had utilized the Tenth Circuit's rationale to a significant extent in its decision.
[6] The court recognizes that the declarant in White was similarly beyond the compulsion of the State. But, there, the body of the statement itself indicated that it was voluntarily given, and the statement was made to a third-party who was clearly able to testify about the immediate circumstances surrounding the taking of the written statement.