**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1151-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

LING ZHOU,

     Defendant-Appellant.

_____

> Argued October 26, 2020 – Decided February 23, 2021
>
> Before Judges Fasciale and Susswein.
>
> On appeal from Superior Court of New Jersey, Law Division, Cape May County, Indictment No. 18-08-0622.
>
> Thomas M. Cannavo argued the cause for appellant (Steven W. Hernandez, PC, attorneys; Thomas M. Cannavo, of counsel and on the brief).
>
> Jeffrey H. Sutherland, Cape May County Prosecutor, argued the cause for respondent (Gretchen A. Pickering, Senior Assistant Prosecutor, attorney; of counsel and on the brief).

PER CURIAM

Defendant, Ling Zhou, appeals from her conditional guilty plea conviction for financial facilitation of criminal activity, N.J.S.A. 2C:21-25(b)(2)(A). Defendant challenges the April 24, 2019 order issued by Judge Sarah Beth Johnson denying her motion to dismiss the indictment. After carefully reviewing the record in light of the governing principles of law, we affirm.

We briefly summarize the evidence presented to the grand jury. In January 2017, a real estate title agency, Seaboard Title Company, received a fraudulent email that caused the agency to transfer funds from an escrow account. Seaboard is located in Avalon, New Jersey. The escrow account contained the proceeds of the sale of property in Avalon. Prior to closing, the real estate agent for the seller, RJ Soens, instructed Seaboard to mail a cheque for the proceeds of the sale in the amount of $788,477. Seaboard thereafter received an email, purportedly sent by Soens, requesting that the proceeds be sent instead by wire transfer. However, that email was not sent from Soens— rather, the originating email address was nearly identical to Soens's save for a subtle misspelling. Deceived into believing that Soens had sent new instructions, Seaboard wired the proceeds of the sale to the Wells Fargo Bank account referenced in the fraudulent email. That account, which was opened and serviced at a branch in Santa Clara, California, was in the name of Happy

A-1151-19

Oceans, Inc. Defendant's signature is the only signature on that account. The proceeds of the sale were transferred almost immediately from defendant's Wells Fargo account to accounts outside the United States.

Law enforcement agencies in other States were investigating similar fraudulent transactions involving defendant. In the course of those investigations, defendant admitted to receiving large sums of money and sending the money to foreign accounts. She admitted to investigators that she knew some of the transferred funds were the result of fraudulent activity. She also admitted to lying on multiple occasions to conceal fraudulent transactions.

Based on this evidence, a grand jury returned an indictment charging defendant with first-degree financial facilitation of criminal activity, N.J.S.A. 2C:21-25(b)(2)(a); second-degree theft by deception, N.J.S.A. 2C:20-4; and second-degree impersonation, N.J.S.A. 2C:21-17(a)(1). Defendant filed a motion to dismiss the indictment arguing that New Jersey lacks jurisdiction to prosecute her for these crimes. She also argued the State failed to present a prima facie case for theft, financial facilitation of criminal activity, or impersonation, and that the prosecutor failed to disclose clearly exculpatory information to the grand jury. Judge Johnson denied defendant's motion,

A-1151-19

rendering an eight-page written decision. Defendant filed an emergent motion seeking leave to appeal, which we denied.

Thereafter, defendant entered a conditional guilty plea to second-degree financial facilitation of criminal activity. The State agreed to dismiss the remaining counts in the indictment. The negotiated agreement recommended a suspended sentence in the third-degree range. The plea agreement also allowed defendant to preserve the right to appeal the order denying her motion to dismiss the indictment. See R. 3:9-3(f).

In November 2019, defendant was sentenced in accordance with the plea agreement to a non-custodial term of probation. Defendant's sentence runs concurrently with a non-custodial sentence imposed in Minnesota stemming from a conviction for similar criminal activity.

Defendant presents the following contentions for our consideration:

POINT I

> THE COURT BELOW ERRED IN DENYING THE DISMISSAL OF THE CHARGES IN THE INDICTMENT DUE TO LACK OF TERRITORIAL JURISDICTION AND EVIDENCE. THUS, THE MONEY LAUNDERING CONVICTION SHOULD BE VACATED AND DISMISSED WITH PREJUDICE.

4

<u>POINT II</u>

FAILURE BY THE STATE TO DISCLOSE CLEARLY EXCULPATORY EVIDENCE TO THE GRAND JURY REQUIRED DISMISSAL OF ALL CHARGES IN THE INDICTMENT WITH PREJUDICE. EVEN IF NOT EXCULPATORY, THE EMAILS AND TEXTS WERE NECESSARY TO A FAIR CONSIDERATION OF JURISDICTION BY THE GRAND JURY.

We reject these contentions and affirm substantially for the reasons expressed in Judge Johnson's thoughtful written opinion. We add the following comments.

I.

Territorial Jurisdiction

As a general proposition, New Jersey may exercise jurisdiction only over offenses that occur within its borders. <u>State v. Sumilkoski</u>, 221 N.J. 93, 101 (2015) (citing <u>State v. Denofa</u>, 187 N.J. 24, 36 (2006)). Territorial jurisdiction nonetheless extends "to offenses committed partly outside of the State." <u>Id.</u> at 102 (quoting <u>State v. Streater</u>, 233 N.J. Super. 537, 543 (App. Div. 1989)). The critical inquiry is whether there exists "a direct nexus to New Jersey." <u>Ibid.</u> (citing N.J.S.A. 2C:1-3).

N.J.S.A. 2C:1-3(a)(1) provides that "a person may be convicted . . . of an offense committed by his [or her] own conduct . . . if [e]ither the conduct which

5

is an element of the offense or the result which is such an element occurs within the State."  Furthermore, N.J.S.A. 2C:1-3(g) extends jurisdiction

> [w]hen the result which is an element of an offense consists of inflicting a harm upon a resident of this State or depriving a resident of this State of a benefit, . . . even if the conduct occurs wholly outside this State and any property that was affected by the offense was located outside this State.

In this instance, the sale of the property occurred in New Jersey, the escrow account containing the proceeds of the sale was located in New Jersey, the fraudulent email that induced the transfer of funds was received in New Jersey, the victim of the criminal scheme was in New Jersey, the financial loss suffered by the victim occurred in New Jersey, and the amount involved that determined the gradation of the money laundering crime is the amount that was stolen from the New Jersey escrow account.  We view these circumstances as sufficient to establish a direct nexus between defendant's criminal activity and this State.

Defendant's reliance on the outcome in Sumilkoski is misplaced.  In that case, school officials chaperoned high school students from New Jersey on an overseas trip.  The school officials were accused of sexually assaulting the students while abroad.  Id. at 95–96.  Although the physical acts constituting the alleged sexual misconduct occurred entirely overseas, the prosecutor argued that

an element of the sexual assault offense—the school officials' supervisory authority over the students, N.J.S.A. 2C:14-2(c)(3)(b)—originated in New Jersey. The Court rejected the State's argument, holding that supervisory authority over the students was merely an attendant circumstance that did not on its own confer jurisdiction.[1] Id. at 106–07. The Court concluded there was insufficient nexus to this State because the alleged sexual conduct and the result—the harm allegedly inflicted on the children by their adult chaperones— occurred entirely outside the borders of New Jersey. Id. at 107.

As Judge Johnson aptly noted, the circumstances in the case before us are quite different from those presented in Sumilkoski. The scheme to electronically divert funds from the targeted New Jersey escrow account was effectuated by a fraudulent email that was addressed to an escrow agent in this State. That email resulted in the transfer of monies from the New Jersey-based account. We deem it to be significant that the financial facilitation of criminal activity statute provides that the grade of the offense is determined by the "amount involved."

---

[1] N.J.S.A. 2C:1-14(h) defines an "[e]lement of an offense" as "conduct," "a result of conduct," or "attendant circumstances." Conduct is defined as "an action or omission and its accompanying state of mind, or, where relevant, a series of acts or omissions." N.J.S.A. 2C:1-14(d). The term "attendant circumstances" is not defined in the New Jersey Code of Criminal Justice statute. Nor does the statute define the term "result of conduct."

A-1151-19

N.J.S.A. 2C:21-27(a) ("The offense defined in [N.J.S.A. 2C:21-25(b)] constitutes a crime of the first degree if the amount involved is $500,000.00 or more."). In the present case, the amount involved relates directly to the money that was fraudulently diverted from the New Jersey escrow account, reflecting the loss suffered by the New Jersey victim. In these circumstances, we believe the "amount involved" element that determines the gradation of the crime is not an "attendant circumstances" element comparable to the school officials' supervisory capacity in Sumilkoski. Rather, we believe the amount involved is tantamount to a "result" element for purposes of establishing territorial jurisdiction. Cf. State v. Tringali, 451 N.J. Super. 18, 31 (App. Div. 2017) ("[T]he 'result,' consisting of the monetary harm to the victim, is an 'element' of the crime of second-degree impersonation, within the meaning of the jurisdiction statute, even though its function is to establish the grade of the crime."). As Judge Johnson aptly noted, "the State has proffered prima facie evidence not only that the victim . . . is a New Jersey entity[,] but also that the property in question . . . was located in New Jersey before it was fraudulently transferred to California." Cf. State v. Aloi, 458 N.J. Super. 234, 241 (App. Div. 2019) (finding that evidence of threats originating in Maryland but received by the alleged victim in New Jersey was sufficient to support indictment for

extortion and establish territorial jurisdiction). Put simply, unlike in Sumilkoski, the harm in this instance occurred in New Jersey.

Furthermore, the act of sending the fraudulent email to New Jersey, which accomplished its objective to precipitate the transfer of funds from the escrow account, constitutes conduct that occurred both in this State and the point of origin, California.[2] That email was an integral part of the criminal scheme to siphon monies from this State and to spirit those funds to overseas accounts. Given that criminal conduct occurred at least partly in this State, and caused financial harm here, we conclude the State established a direct nexus sufficient to hold defendant accountable under New Jersey criminal law.

II.

Prima Facie Case

We next address defendant's contention the State failed to present to the grand jury sufficient proofs to establish a prima facie case of money laundering, theft, and false personation. This contention lacks sufficient merit to warrant extensive discussion in this opinion. R. 2:11-3(e)(2). An indictment is presumed valid, see State v. Perry, 124 N.J. 128, 167–68 (1991), and should not

---

[2] We recognize that defendant denies having sent that email. As discussed in Section II, infra, the State presented ample evidence to establish a prima facie case that defendant committed the theft.

A-1151-19

be dismissed unless "manifestly deficient or palpably defective," State v. Hogan, 144 N.J. 216, 229 (1996). See also Tringali, 451 N.J. Super. at 27 ("A trial court should only dismiss an indictment on the 'clearest and plainest' grounds and only when it is clearly defective.") (quoting State v. N.J. Trade Waste Ass'n, 96 N.J. 8, 18–19 (1984)). The scope of our review is narrow. We review the trial court's determination of a motion to dismiss for a clear abuse of discretion. Aloi, 458 N.J. Super. at 238 (citing State v. Ferguson, 455 N.J. Super. 56, 63 (App. Div. 2018)).

The grand jury is tasked with "determin[ing] whether the State has established a prima facie case that a crime has been committed and that the accused has committed it." Hogan, 144 N.J. at 228. A prima facie case is much less than the proof beyond a reasonable doubt standard necessary to sustain a conviction. While a prima facie case requires "at least 'some evidence as to each element' of the alleged crime," we have recognized that "the quantum of such evidence 'need not be great.'" State v. Fleischman, 383 N.J. Super. 396, 399 (App. Div. 2006) (quoting State v. Schenkolewski, 301 N.J. Super. 115, 137 (App. Div. 1997)). In determining whether the prima facie standard is met, "[t]he court should evaluate whether, viewing the evidence and the rational inferences drawn from that evidence in the light most favorable to the State, a

grand jury could reasonably believe that a crime occurred and that the defendant committed it." State v. Morrison, 188 N.J. 2, 13 (2006).

As Judge Johnson explained in her opinion, the grand jury heard testimony from a detective that following the receipt of the fraudulent email, Seaboard Title transferred $788,477 to a bank account that belonged only to defendant. Money was then electronically transferred almost immediately from defendant's account to multiple foreign bank accounts. When defendant was asked by out-of-state investigators about suspicious transactions, she admitted that she knew some of the funds she had transferred from her account were the result of fraudulent activity. Defendant also admitted to lying to conceal the fraud. Viewed in the light most favorable to the State, and allowing for rational inferences, this evidence was sufficient for the grand jury to reasonably believe that defendant had committed financial facilitation of criminal activity, impersonation, and theft by deception. Morrison, 188 N.J. at 13.

III.

Exculpatory Evidence

We also reject defendant's contention Judge Johnson erred by denying the motion to dismiss the indictment on the grounds the prosecutor failed to present clearly exculpatory evidence to the grand jury. Defendant portrays herself as a

11

victim of a foreign conman referred to as "Gerald Moretti," with whom she had a romantic relationship. She contends the grand jury should have been provided with the voluminous emails and text messages between defendant and Moretti. Judge Johnson did not abuse her discretion in reaching a contrary conclusion.

Prosecutors have a "limited [disclosure] duty" to disclose to the grand jury evidence that both "directly negates the guilt of the accused <u>and</u> is clearly exculpatory." <u>State v. Hogan</u>, 144 N.J. 216, 237 (1996). Evidence that directly negates the guilt of the accused is defined as evidence that "squarely refutes an element of the crime in question." <u>Ibid.</u> This does not include evidence as to motive, which generally is not an element of a crime. <u>Ibid.</u>

The second requirement, that evidence be clearly exculpatory, "requires an evaluation of the quality and reliability of the evidence." <u>Ibid.</u> The evidence "must be sufficiently reliable[,] bear some indicia of credibility in its own right[, and] cannot require the grand jury to engage in significant credibility determinations." <u>State v. Evans</u>, 352 N.J. Super. 178, 197 (App. Div. 2001).

Defendant presented Judge Johnson with a package of emails, text messages, and an audio recording of defendant's interview with out-of-state investigators. Because we affirm for the reasons explained in Judge Johnson's written opinion, we need not in this opinion re-address defendant's arguments at

12

length, much less describe each communication. We note the record shows that Judge Johnson carefully reviewed these submissions before rendering her decision.

Applying the principles established in State v. Evans, 352 N.J. Super. 178, 196 (2001), Judge Johnson examined the emails and text messages to determine whether they were "sufficiently reliable and bear[] some indicia of credibility in [their] own right without requiring the grand jury to engage in any credibility determinations." Ibid. Judge Johnson concluded the emails and text messages failed to meet that standard because the grand jury would be required to make a credibility determination as to the authenticity and veracity of those communications.

Judge Johnson characterized the emails and text messages as "a series of disjointed communications, taken out of context and supported by a self-serving statement, which do not establish that [d]efendant was an innocent and unwitting actor in these events." The judge added that these communications neither "affirmatively or unequivocally show that [d]efendant played no role in sending the undisputedly fraudulent email to Seaboard; nor do they show that she reasonably believed she had a valid or legal claim to the $788,000 transferred

into her bank account—particularly when [d]efendant knew that similar, past transfers were the result of fraudulent activity."

The judge also reviewed the recorded interview and found it demonstrated defendant was aware, or should reasonably have been aware, she was a participant in a fraudulent money transfer scheme. That interview also confirmed she intentionally misrepresented the purpose of the transactions.

We agree with Judge Johnson's conclusion that the evidence submitted by defendant was not clearly exculpatory. Evans, 352 N.J. Super. at 197. At best, the text messages and emails show that defendant was motivated to commit the offenses by her misguided devotion to Moretti. However, such evidence of motive does not directly negate any element of the charged offenses and thus was not required to be presented to the grand jury. Hogan, 144 N.J. at 235.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1151-19